UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ROSS R. KILLIAN, | No. C 12-0706 PJH (PR) |
|         Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING CERTIFICATE OF APPEALABILITY** |
|    vs. | |
| ANTHONY HEDGPETH, | |
|         Respondent. | |

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the court. Petitioner responded with a traverse. For the reasons set out below, the petition is denied.

**BACKGROUND**

On October 23, 2009, a Monterey County jury convicted petitioner of possession of ammunition (Cal. Penal Code § 12316(b)(1)); possession of a destructive device (Cal. Penal Code § 12303); possession of controlled substance paraphernalia (Cal. Health & Safety Code § 11364(a)); and possession of fireworks in an unincorporated part of Monterey County (Monterey County Code §10.68.020); with one strike prior conviction (Cal. Penal Code § 1170.12). Clerk's Transcript ("CT") 6-9, 69. On January 29, 2010, the trial court sentenced petitioner to four years in prison. *Id.* at 106-07, 109-10.

On April 25, 2011, the California Court of Appeal, in an unpublished decision, reversed the judgment as to the fireworks count, and remanded to the trial court for re-

sentencing. Lodged Documents, Ex. E. On the same date, the California Court of Appeal summarily denied the habeas petition petitioner had filed in that court. Exs. E at 1, F. On August 17, 2011, the California Supreme Court denied review of the habeas denial. Ex. G.

**FACTS**

The following facts are taken from a suppression hearing after petitioner filed a motion to suppress the evidence found during the search of petitioner's home prior to his arrest.

**The Prosecution Evidence**

The evidence presented at the motion to suppress hearing established that at 5:20 p.m. on July 17, 2009, Monterey County Sheriff's deputies went to petitioner's residence in Aromas to investigate a "verbal domestic disturbance." Reporter's Transcript ("RT") at 6-7. When the deputies arrived, Deputy Cameron Vondollen contacted petitioner, who was standing in front of the house. *Id.* at 7-8. It appeared to Deputy Vondollen that the disturbance had been resolved because "[t]here was no argument at the time." *Id.* at 15.

The sheriff's department had "a couple of previous enforcement contacts" with petitioner, testified Sergeant David Murray, who was also present at the scene. *Id.* at 20. "There was everything ranging from a peace disturbance between himself and his tenants in a separate residence on that property. There were prior domestics. And PG&E wanted to . . . disconnect the power, because apparently someone at that house had an illegal hookup into the power line." *Id.* at 20-21.

The deputies checked to determine whether petitioner had any active warrants as they were responding to the address. *Id.* at 21. When they arrived on scene, the warrant division of the sheriff's department informed Sergeant Irons that petitioner was on probation in Alameda County for driving under the influence and was subject to a search and seizure condition. *Id.* at 22. Sergeant Irons related this information to Sergeant Murray, who "was standing right next to" Sergeant Irons. *Id.* at 23.

Sergeant Murray explained the process by which information is retrieved:

> [The warrants division will] run through CLETS and CJIS system, which is our local system, his name, see if there's any matches for any warrants, probation, or parole. They'll also call the county that may be involved, such as Alameda or Santa Cruz County. They'll call their warrants division, and we will provide them the name, search their records, and they'll confirm whether or not they were on parole or probation, or whether or not there are any warrants. The[y] will actually pull the hard copies, or bring it up in their database, and confirm [i]t that way in any and all terms.

RT at 21-22.

The hard copy of the order placing petitioner on probation reflected that the search and seizure condition did not apply to his residence. *Id.* at 27. However, the warrants division had told Sergeant Irons that the search condition included petitioner's residence. *Id.* The deputies did not have a copy of the hard copy at the time of the search. *Id.* at 25. Sergeant Murray, who received information from the warrants division "thousands of times," could not recall ever having received incorrect information regarding search and seizure terms from the warrants division. *Id.* at 25-26.

The deputies decided to perform a probation compliance check on the residence. *Id.* at 11. "Because of his previous history with law enforcement," petitioner was placed in the rear of Deputy Vondollen's vehicle for "officer safety purposes." *Id.* at 8. Kelly Greene came to the front of the residence and represented that she was petitioner's wife. *Id.* She told the deputies that while she was packing to move out of the house, she and petitioner argued loudly. *Id.* at 9. Petitioner followed her around the house, at one point throwing one of her bags across the bedroom. *Id.* She attempted to contact police, but petitioner would not let her use his cell phone, the only phone in the house, and her attempt to use a neighbor's phone was unsuccessful. *Id.*

Although the deputies had confirmed that petitioner had a search and seizure condition, they asked for, and received, permission from Greene to search the house. *Id.* at 10. The deputies recovered "flashbang" explosive devices, live shotgun and rifle cartridges, a methamphetamine pipe, and marijuana. *Id.* at 13-15.

3

**Defense Evidence**

Kelly Greene testified that she "[did not] remember giving [the deputies] permission [to search the house]." *Id.* at 33.

**The Court's Ruling**

Rejecting Greene's testimony, the trial court found that the deputies requested her permission to search the house "and that Greene did in fact give the officers consent." *Id.* at 36. Her consent was valid, the court also found, because "she was a resident of that particular location [who] was packing and moving out." *Id.*

In light of the ruling that Greene validly consented to the search, the court did not reach the issue whether the official channels doctrine justified the search based on petitioner's probationary status. *Id.* at 35.

**Petitioner's Factual Allegations**

In state court, in addition to the evidence presented at the motion to suppress hearing, petitioner alleged that prior to the arrival of the deputies, he had called 911 to request a civil standby to supervise his wife's departure from the home. Ex. F, Petitioner Exhibit ("Pet'r Ex.") C. He was holding his infant son in his arms when he went outside to meet the officers. Ex. F, Pet'r Ex. C. Two deputies were on the porch; four others were nearby. Ex. F, Pet'r Ex. C. Four patrol cars were in his driveway. Ex. F, Pet'r Ex. C. Petitioner cooperated with the deputies, speaking to them in a calm voice. Ex. F, Pet'r Ex. G. The deputies handcuffed petitioner and placed him in a patrol car in the driveway. Ex. F, Pet'r Ex. C.

In his federal habeas petition, petitioner argued that he told officers that they were making a mistake when they informed him that they were doing a probation compliance check; he had not included this argument in his state claim. Petition for a Writ of Habeas Corpus ("Hab. Pet.") at 4. In his traverse, petitioner took the position that he was not

4

aware that the officers were doing a probation compliance search. Traverse at 4.[1]

In his incident report, Deputy Vondollen stated Sergeant Murray told him that petitioner had a history of assaulting police officers. RT at 20-21. Sergeant Murray did not refer to any assaultive conduct on police officers in his testimony. *Id.*

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly

---

[1] Police officers never told petitioner that they were detaining him to do a probation compliance search; Officer Vondollen stated that they were detaining him for officer safety. RT at 8.

5

established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n.2 (9th Cir. 2000). However, when presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state-court decision is objectively unreasonable. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). This review is not a "de novo review of the constitutional issue" rather, it is the only way a federal court can determine whether a state-court decision is objectively unreasonable where the state court is silent. *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "[W]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

## DISCUSSION

As grounds for federal habeas relief, petitioner asserts that his counsel was ineffective for failing to argue that the police could not rely on his wife's consent to a search of their residence.

### I. Ineffective Assistance of Counsel

Petitioner contends that his trial counsel was ineffective for failing to argue that his wife's consent was not valid for a search of their home pursuant to *Georgia v. Randolph*, 547 U.S. 103 (2006). Hab. Pet. at 8,13.

6

### A.     Legal Standard

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687–88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

The *Strickland* framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quoting 28 U.S.C. § 2254(d)). A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. *See id.* at 1410–11; *Harrington*, 131 S. Ct. at 788; *Premo v. Moore*, 131 S. Ct. 733, 740 (2011) (same). The general rule of *Strickland*, i.e., to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). When § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is

whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Harrington*, 131 S. Ct. at 788.

To demonstrate deficient performance, a petitioner is required to show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 687.

**B.     Discussion**

This claim was denied without a reasoned opinion by the state court; therefore, the court must conduct an independent review of the record. *Delgado,* 223 F.3d at 982. During the motion to suppress hearing, trial counsel did not argue that Greene's consent to search petitioner's residence was invalid. Hab. Pet. at 8, 13. Petitioner contends that because trial counsel did not argue against the consent search under *Randolph*, he was deprived of his Sixth Amendment right to effective counsel. [2] *Id.* Under the *Strickland* standard, petitioner was not deprived of this right and the claim must be denied.

Trial counsel's failure to argue that Greene's consent was invalid was not an error. During the motion to suppress hearing, petitioner's counsel argued that the search was not valid because it was an improper probation search. RT at 34-35. Counsel believed that the search was valid because of Greene's consent. Pet'r Exs. E, F. "[A] third party who [possesses] common authority over... the premises" is allowed to consent to a warrantless search. *United States v. Matlock*, 415 U.S. 164, 171 (1974). Here, Greene was a resident of the house and gave her consent to search the house. RT at 36.

Petitioner does not argue that Greene was unable to consent, but rather that her consent was not valid under *Randolph*. Hab. Pet. at 2. In *Georgia v. Randolph*, the defendant's "estranged wife gave police permission to search the marital residence for items of drug use after the [petitioner], who was also present, had unequivocally refused to

---

[2] It is unclear whether trial counsel was aware of *Randolph* during the suppression hearing. The trial court asked both petitioner's trial counsel and the district attorney whether either one of them were aware of a "very, very recent case that has some fact patterns and situations that are very similar to this" case. RT at 4-5. Both parties stated no. *Id.*

8

give consent." 547 U.S. 103 (2006).  The Court held "that a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Id.* at 120.  The Court emphasized that the objecting co-inhabitant must be present to object. *Id.* at 121.  "[I]f a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenants's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out." *Id.*

Here, petitioner was detained in the back of Deputy Vondollen's patrol car when the deputies asked for consent to search the house from Greene and therefore, was not present at the threshold to object to the search.   RT at 8, 10-11.  With petitioner not present to object, Greene's consent was valid absent any evidence that petitioner was removed by deputies to avoid his objection to their search of his house under *Randolph*. 547 U.S. at 120-21.  Nothing in the record suggests that petitioner was removed to avoid an objection to the search of his house.  Petitioner was removed for officer safety as he had prior contacts with law enforcement and of course, and given the potential for violence inherent in domestic disturbances resulting in police intervention, the need for petitioner's removal was obvious.  Thus this claim must fail. *See United States v. Wilburn*, 473 F.3d 742, 745 (7th Cir. 2007) (holding that consent by co-occupant is valid while defendant is outside apartment in police car); *see also United States v. Shrader*, 675 F.3d 300, 307 (4th Cir. 2012) (holding that a defendant must be present to object to search; once validly arrested, a co-occupant's consent can override defendant's previous objection).

Moreover, the officers were aware that petitioner was on probation and were under the impression (even though mistaken) that he was subject to compliance searches.  RT at 21-22.  Even though they believed they had a legal right to enter the house before speaking with Greene, the deputies still asked her consent before entering the home. *Id.* at 9.  Based on the record in this case, there would have been no need for the police to

purposefully and, in bad faith, remove petitioner to obtain Greene's consent, as the police already believed they could legally search the house based on the mistake from the warrant division.  Petitioner's conclusory allegations that police officers purposefully removed him to obtain consent and circumvent *Randolph* fail to support his claim.

Petitioner has therefore failed to establish that counsel's failure to argue that Greene's consent search was not valid pursuant to *Randolph*, constituted deficient performance. Petitioner also fails to establish prejudice as it is clear that any claim raised pursuant to *Randolph* would have been denied for the reasons set forth above.  "Failure to raise a meritless argument does not constitute ineffective assistance."  *Moormann v. Ryan*, 628 F.3d 1102, 1109-10 (9th Cir. 2010) (quoting *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985)).  Accordingly, the state court's determination that petitioner was not denied effective assistance of counsel was not contrary to, or an unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d); *Strickland*, 466 U.S. at 687.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

## APPEALABILITY

To obtain a Certificate of Appealability, petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Section 2253(c)(3) requires a court granting a COA to indicate which issues satisfy the COA standard.  Here, the court finds that only one issue presented by petitioner in his petition meets the above standard and accordingly GRANTS the COA as to that issue.  *See generally Miller-El*, 537 U.S. at 322.

That issue is:

(1) whether counsel was ineffective for failing to argue that the police could not rely on petitioner's wife's consent to a search of their residence.

Accordingly, the clerk shall forward the file, including a copy of this order, to the Court of Appeals. *See* Fed. R. App. P. 22(b); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997).

**IT IS SO ORDERED.**

Dated: July 19, 2013.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.12\Killian0754.hc.wpd